Approved: _____
         ALEXANDRA N. ROTHMAN
         Assistant United States Attorney

Before:  THE HONORABLE HENRY PITMAN
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :   SEALED COMPLAINT
                                    :
        - v. -                      :   Violations of 18 U.S.C.
                                    :   §§ 922(g)(1), (g)(8),
OTONIEL CARRASCO,                   :   922(k), and 2
RETREY KHUN, and                    :
ROY WILLIAMS,                       :
    a/k/a "Joseph A. Williams,"     :   COUNTY OF OFFENSE:
                                    :   BRONX
                Defendants.         :
                                    :
- - - - - - - - - - - - - - - - - - X

**17 MAG 0060**

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JESSICA ALVARADO, being duly sworn, deposes and says that she is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Felon in Possession)

   1. On or about December 26, 2016, in the Southern District of New York and elsewhere, ROY WILLIAMS, a/k/a "Joseph A. Williams," the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce a firearm, to wit, a Hi-Point, Model C9, 9 millimeter Luger pistol, which had previously been shipped and transported in interstate and foreign commerce.

   (Title 18, United States Code, Section 922(g)(1).)

COUNT TWO
(Possession by a Prohibited Person)

2.      On or about December 26, 2016, in the Southern District of New York and elsewhere, OTONIEL CARRASCO, the defendant, while subject to a court order that (a) was issued after a hearing of which the defendant received actual notice, and at which the defendant had an opportunity to participate; (b) restrains the defendant from harassing, stalking, or threatening an intimate partner; and (c) by its terms explicitly prohibits the use, attempted use, and threatened use of physical force against such intimate partner that would reasonably be expected to cause bodily injury, did knowingly possess in and affecting commerce a firearm, to wit, a Hi-Point, Model C9, 9 millimeter Luger pistol, which had previously been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(8).)

COUNT THREE
(Possession of a Defaced Firearm)

3.      On or about December 26, 2016, in the Southern District of New York and elsewhere, RETREY KHUN and ROY WILLIAMS, a/k/a "Joseph A. Williams," the defendants, knowingly did possess a firearm which had the importer's and manufacturer's serial number removed, obliterated, and altered, to wit, a defaced Hi-Point, Model C9, 9 millimeter Luger pistol, which had previously been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Sections 922(k) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.      I am a Detective with the NYPD.  This affidavit is based on my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, my review of video recordings, as well as my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

5. As set forth in greater detail below, I have participated in an investigation of an incident on or about December 26, 2016. My investigation has included, among other things, review of surveillance footage, interviews with NYPD officers, and examination of documentary evidence. It has shown that, on the evening of December 26, 2016, ROY WILLIAMS, a/k/a "Joseph A. Williams," the defendant, fired a gun with a defaced serial number in the air in the vicinity of a particular apartment building in the Bronx, New York. See infra ¶¶ 6(a)-6(f). WILLIAMS then gave the gun to OTONIEL CARRASCO, the defendant. See infra ¶ 6(f). RETREY KHUN, the defendant, ultimately took custody of the gun and secreted it in her bag, in an apparent effort to conceal it from law enforcement. See infra ¶¶ 6(k)-6(n). When these events occurred, WILLIAMS had previously been convicted of a felony offense, see infra ¶ 11, and CARRASCO was subject to an order of protection, see infra ¶ 10.

## The Investigation

6. Based upon my conversations with NYPD officers who participated in the arrest of OTONIEL CARRASCO, RETREY KHUN, and ROY WILLIAMS, a/k/a "Joseph A. Williams," the defendants, I have learned, among other things, the following:

a. On or about December 26, 2016, at approximately 11:00 p.m., two NYPD officers ("PO-1" and "PO-2") received notice over the radio about a 911 call reporting a gunshot in the vicinity of 1334 Ogden Avenue in the Bronx, New York.

b. PO-1 and PO-2 drove to the address and saw a black man later identified as WILLIAMS, see infra ¶ 6(d), standing next to a parked vehicle outside of an apartment building at 1324 Ogden Avenue (the "Building"). WILLIAMS was standing with two NYPD officers who had also responded to the 911 call. WILLIAMS was wearing a blue jacket and blue hat.

c. PO-1 and PO-2 dialed the telephone number of the 911 caller and spoke with the individual who had reported the gunshot (the "Witness"). The Witness stated that the Witness saw a tall man wearing a blue jacket and blue hat discharge a firearm into the air.

3

        d.    WILLIAMS was placed under arrest and transported to the 44th Precinct in an NYPD vehicle.

        e.    PO-1 and PO-2 returned to the Building to investigate whether there was any video footage of the alleged shooting. PO-1 and PO-2 noticed that there were cameras outside of the Building. PO-1 and PO-2 spoke with the superintendent of the Building (the "Superintendent") who allowed them to view the video footage that was recorded on December 26, 2016.

        f.    PO-1 proceeded to watch three videos of the Building recorded on December 26, 2016, (collectively, the "Surveillance Footage"), and noted the following:

        i.    In one video, shot from inside the Building, a man later identified as CARRASCO is seen exiting the Building.

        ii.    In another video, shot from outside the Building, WILLIAMS is seen discharging a firearm into the air.

        iii.    In a third video, shot from inside the hallway of the Building, WILLIAMS is seen passing the firearm to a man later identified as CARRASCO before heading upstairs.

        g.    The Superintendent identified the man who the Surveillance Footage showed exiting the Building and receiving the firearm from WILLIAMS as CARRASCO. The Superintendent told PO-1 that CARRASCO lived with another individual in a particular apartment in the Building.

        h.    PO-1 relayed the substance of the videos to PO-2. PO-2 then requested additional NYPD officer backup to assist at the scene.

        i.    Two NYPD officers ("PO-3" and "PO-4"), who were on patrol in the Bronx, responded to PO-2's request for backup and drove to the Building. PO-2 informed PO-3 and PO-4 that they had video footage of WILLIAMS discharging a firearm into the air, and of CARRASCO, who lived in the Apartment, holding the firearm. PO-2 ordered PO-3 and PO-4 to stand outside of the Apartment in case anyone tried to leave the Apartment with the firearm.

        j.    While PO-3 and PO-4 stood outside of the Apartment, they heard noises from inside the Apartment and then heard someone unlock the door to the Apartment. CARRASCO began

to step outside of the Apartment when PO-3 ordered CARRASCO to stand still and put his hands in the air. PO-3 subsequently placed CARRASCO in handcuffs.

        k. Meanwhile, a woman later identified as KHUN, who was carrying a black laptop bag, tried to leave the Apartment. PO-3 and PO-4 escorted KHUN and CARRASCO back into the Apartment.

        l. PO-3 called PO-2 to inform PO-2 that they had entered the Apartment. PO-2 came upstairs and joined the other officers in the Apartment.

        m. At this point, PO-2, PO-3, and PO-4 observed that KHUN appeared to be very nervous. PO-4 asked KHUN to remove her laptop bag but KHUN refused. KHUN finally removed her bag and handed it to PO-3.

        n. PO-3 recovered a knotted plastic bag from the laptop bag, opened it, and found a firearm, which was wrapped in several shirts (the "Firearm") in an apparent effort to conceal it.

        o. CARRASCO and KHUN were arrested and transported to the 44th Precinct in an NYPD vehicle.

        7. I have reviewed the Surveillance Footage. My understanding of the events depicted on the videos is consistent with what PO-1 reported observing. See supra ¶¶ 6(f)-6(h).

        8. Based on my review of an NYPD Firearm Report, I have learned that the Firearm is a Hi-Point, Model C9, 9 millimeter Luger pistol, with a defaced serial number. Based on my review of pictures of the Firearm, the serial number on the Firearm has been defaced in a manner that is readily visible.

        9. Based on my training and experience, and my communications with other law enforcement agents, including a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms, I know that the Firearm was not manufactured in New York State.

5

10. I have reviewed criminal history records pertaining to ONTONIEL CARRASCO, the defendant, as well as a transcript of a court proceeding and an associated order of protection, from which I have learned the following:

 a. On or about November 14, 2016, after a hearing at which CARRASCO was present and had an opportunity to participate, the Honorable Marsha Michael of the Bronx Criminal Court issued an order of protection.

 b. Among other things, the order of protection restrained CARRASCO from harassing, stalking, or threatening the mother of his child, and by its explicit terms prohibiting the use, threatened use, or attempted use of physical force against the mother of his child. The order of protection also required CARRASCO to surrender all firearms owned or possessed, and refrain from obtaining new firearms.

 c. The order of protection was in effect as of December 26, 2016.

11. Based on my review of criminal history records pertaining to ROY WILLIAMS, a/k/a "Joseph A. Williams," the defendant, I have learned that WILLIAMS was convicted on or about January 27, 1997, in New York Supreme Court, Kings Country, of robbery in the third degree, in violation of New York Penal Law § 160.05, a Class D Felony, which is punishable by imprisonment for more than one year.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of OTONIEL CARRASCO, RETREY KHUN, and ROY WILLIAMS, a/k/a "Joseph A. Williams," the defendants, and that they be imprisoned or bailed, as the case may be.

_____
JESSICA ALVARADO
Detective
New York City Police Department

Sworn to before me this
5th day of January, 2017

_____
THE HONORABLE HENRY PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7